## WINCHESTER vs. CRANDALL and others.

A return to an execution at law against three defendants, that they had no goods, chattels, or real estate of which the execution could be col-lected, without stating that neither of them had such property, is a sufficient return to show that the execution could neither be collected of the joint property of the defendants, or from the separte property of either of them.

A bill to set aside the sale of real estate as fraudulent with a view of subjecting it to sale under an execution, must make the assignee of the grantee, who is the owner of the real estate at the time the bill is filed, a party.

This is a common creditor's bill, so far as the de-fendants John G. Crandall, Asa Rowe, and John Lake, are concerned. The return of the Sheriff to the execution, as stated in the bill is, "that he could "find no goods, or chattels, or real estate of the said "John G. Crandall, John Lake, and Asa Rowe, in "his bailiwick, whereof the said damages, or any part "thereof, could be made." The defendants Nelson

Dec. 1840.

Winchester
v.
Crandall and
others.

Sage, and Lyman W. Lake are made parties defendants, as assignees for the benefit of creditors of the other defendant, John Lake, with a view of either impeaching that assignment, or of compelling the assignees to dispose of the assigned property and pay the debts, specified in the assignment. The facts to be gathered from the bill and answer are, that the defendant John Lake executed the note upon which the judgment was obtained as security for John G. Crandall, Asa Rowe, or one of them. John Lake defended the suit, but judgment was obtained on the note, May 4, 1840. In the month of April, 1840, John Lake sold his real estate, consisting of 374 acres of land, to his son-in-law, Nelson Sage. The consideration of the sale was, that Sage should assume the mortgages upon the real estate, amounting to upwards of $4000, and assign to the vendor a bond and mortgage upon lands in Michigan for about $13,000. The sale was completed upon this basis, and a deed executed to Sage. John Lake, in order to protect himself, or indemnify himself, against his liabilities upon the above mentioned note, took from Asa Rowe, the assignment of a mortgage executed by John B. Reed for about $1,900, which was simply an indemnity against his liability upon Rowe's note. On the 2d May, 1840, John Lake made an assignment to his son-in-law, Nelson Sage, and his son, Lyman W. Lake, of all his property for the benefit of his creditors. Among the property so assigned was the Michigan mortgage, and the mortgage received from Rowe, and considerable other personal property. The assignment contemplated two classes of creditors; the first amounting to about $2,800, consisting of John Lake's personal

debts, on his own account, to be paid first, and the

second consisting of the debt due to the complain-
ant. Before the filing of the bill in this cause, Sage
sold and conveyed the real estate purchased by him
of John Lake, to Aristarchus Champion, and Cham-
pion is not made a party to this suit. The complain-
ant alleges that the sale of the real estate by John
Lake, and the subsequent assignment made by him,
were executed to defraud his creditors. The an-
swer denies the fraud, and gives a full history of the
transaction, and a precise account of the debts pre-
ferred by the assignment, and the consideration of
the indebtedness. Upon coming in of the answer,
a motion is made to dissolve the injunction upon bill
and answer.

*E. Mather*, for complainants.

*J. D. Husbands*, for defendants.

The Vice Chancellor. The defendants first
insist, that the sheriff's return upon the execution at
law, is not sufficient to show that the complainant
has exhausted his remedy at law. They insist that
the return merely shews that there was no *joint*
property of these defendants out of which the debt
could be collected, and that it does not preclude
the idea but there might be separate property of ei-
ther of the defendants from which the debt might
be made. So far however as this court is concerned,
this is a decided question. In Austin vs. Figueira, 7
Paige, 56, the same objection was made upon a simi-
lar return. That however was a case where only
one of the defendants was served with process,
which is a stronger case than this. The Chancellor

says, " the return is as broad as the command in the " body of the execution." And farther, " there can " be no doubt that such a return to the execution " would have been sufficient, if both defendants had " been served with process. And that the sheriff " might be sued for a false return, if it could be " shown that either defendant had separate property " upon which he had neglected to levy and satisfy " the execution." This must dispose of this objection.

As to the alleged fraudulent sale and assignment. One of the usual badges of fraud, in the sale of real estate by a person in contemplation of having judgments obtained against him is, the sale and conveyance to some person (usually a relative) and the taking back a bond and mortgage upon the same property for the payment of the purchase money at a very extended time. Such in most cases would be decided to be a device to hinder and delay creditors. In this case the sale was to a relative indeed, but the purchase money instead of being paid by a mortgage upon the premises, was paid by assuming mortgages upon it, growing due soon, and by the assignment of a mortgage upon another piece of property, to become due, the first payment, in May, 1841, and the remainder in two annual payments thereafter ; certainly not a very long credit for so considerable a piece of property. I can see nothing either to induce the belief that the price paid for the real estate so sold was not fully equal to its actual value. However this may be, there is another feature of the case which will prevent the sale from being set aside, so that the complainant can reach this real estate by his execution on his judgment

Before the filing of the bill in this case ; this real es-
tate was sold by Sage to Champion, who from aught
that appears is an innocent purchaser. He is not
made a party, and until he is brought in, no decree
can be made setting aside the sale, so that the com-
plainant can reach this real estate by execution.
The complainant's only resource under the present
pleadings, is to enforce the lien acquired by his bill
upon the equitable assets of John Lake. If the as-
signment made by him is fraudulent, this lien will be
prior to the assignment. If it is fair and bona fide,
it will be subsequent to the assignment.

This leads us to the consideration of the fairness
and legality of the assignment. The badges of fraud
insisted upon, are the execution of this paper just
before, and but just before the rendering of the judg-
ment—that it was made to his near relatives—that
those relatives were preferred as creditors by it—
that the mortgage assigned to him by Rowe as an
indemnity was included in it as his absolute property
—and that the answer discloses a number of incon-
sistencies. Upon examining the whole matter with
considerable care, I am inclined to come to a conclu-
sion in favor of the fairness of the assignment. At
the time it was made, Lake was considerably in debt
for monies lent him, and for services performed for
him. A judgment was about to be rendered against
him for a debt which he was legally liable to pay,
as a security for others. If this judgment was vig-
orously enforced, the means, which he might have
expected to use to pay his own debts, might be wres-
ted from him and sacrificed, so that the payment of
his own proper debts might be postponed injuri-
ously to that class of creditors. He had enough to

pay all, but with that feeling of honor which most men under such circumstances entertain, he was desirous that his own proper debts should be paid first. The assignment was drawn to effect that object, and as long as assignments of this character are tolerated at all, this seems to me to be a case where it is proper and justifiable. Neither, under the circumstances, is the fact that his relatives were the assignees exceptionable. They were his principal creditors. The answer is full, that these debts as well as all the other debts provided for in the first class were honestly due. The answer also denies all fraudulent intent. The only suspicious circumstance to my mind is, the assignment of the mortgage received by him from Rowe, as an indemnity merely, in the same manner as if it was his absolute property. But as to this, the assignees answer, that they received this mortgage with full knowledge of the purpose with which it was assigned to John Lake. So far as this is concerned, they are trustees, and so admit themselves virtually to be by their answer ; and the complainant can, if he pleases compel them to go on and dispose of this mortgage, and apply the proceeds specifically to the payment of his debt. I shall therefore come to the conclusion in this stage of the cause, that the assignment is valid.

Another feature of the complainant's bill is, to compel the assignees to proceed in the performance of their trust, dispose of the trust property, and distribute the proceeds according to the provisions of the trust deed. This it is doubtless competent and proper for him to do. But they cannot dispose of it while they are restrained by injunction. There is no allegation in the bill that the trustees are insolvent or

irresponsible, or that they are improper persons to execute such a trust. There is then no reason under the view which I take of the case, why the injunction, as to these trustees, should not be dissolved. It may and should be retained as to the judgment debtors. The injunction is therefore dissolved as to the defendants Nelson Sage and Lyman W. Lake, but retained as to the other defendants. Costs to abide the event of the suit, as to the defendants Nelson Sage and Lyman W. Lake.